# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                                      CRIMINAL ACTION

VERSUS                                                                                       15-165-SDD-EWD

CARL D. WRIGHT

## RULING

This matter is before the Court on the *Motion to Vacate Under 28 U.S.C. 2255*[1] by Defendant Carl D. Wright ("Defendant"). The Government has filed an *Opposition* to this motion.[2] Defendant claims he received ineffective assistance of counsel which caused him to enter a plea unintelligently and unknowingly, and counsel failed to present an alternative to going to trial.[3] Further, Defendant contends he received ineffective assistance of counsel when his attorney failed to effectively object to the Pre-Sentence Investigation Report ("PSR").[4] Additionally, Defendant contends the Court operated outside of its jurisdiction by using the conspiracy statute, which was not the basis of his conviction, to enhance the Defendant's sentence.[5] Finally, Defendant contends that his counsel failed to recommend a non-guideline sentence.[6] For the reasons set forth below, Defendant's *Motion* shall be denied.

---

[1] Rec. Doc. No. 67.
[2] Rec. Doc. No. 69.
[3] *Id.* at p. 4.
[4] *Id.* at p. 5.
[5] *Id.* at p. 7.
[6] *Id.* at p. 8.

I.  **BACKGROUND FACTS**

On November 12, 2015, Defendant was charged by indictment with eight counts of bank fraud, and eight counts of making false statements to a financial institution.[7] From in or about August of 2004 through in or about November of 2010, Carl D. Wright, Defendant, knowingly executed and attempted to execute a scheme to defraud several financial institutions to obtain money, funds, credits, assets, and other property of the financial institutions to enrich himself.[8] Defendant received loan proceeds after submitting false personal financial statements, fraudulent personal and business income tax returns and other tax documents, underrepresenting his liabilities, misrepresenting his assets, using a false social security number, concealing prior felony convictions, obscuring his status as a party to a lawsuit, and misrepresenting his income tax return filings.

On August 31, 2016, in accordance with a plea agreement, Defendant pled guilty to one count of Bank Fraud (count 1), and four counts of Making False Statements to a Financial Institution (Counts 10, 11, 12, and 13).[9] Subsequently, on December 8, 2016, a Sealed PSR was filed by the United States Probation Office that recommended a sentencing range of 63 to 78 months.[10] Defendant's counsel raised six objections to the PSR's suggested sentencing recommendation.[11]

On June 19, 2017, the Defendant was sentenced to 72 months on the counts to which he pled, to be served concurrently.[12] The sentence falls within the suggested

---

[7] Rec. Doc. No. 1.
[8] *Id.* at p. 2.
[9] Rec. Doc. Nos. 38-39.
[10] Rec. Doc. No. 41, p. 88.
[11] Rec. Doc. No. 69, p. 3-4.
[12] Rec. Doc. No. 58.

sentencing guidelines for bank fraud and making false statements to a financial institution.[13] Defendant now moves to vacate in accordance with 28 U.S.C. 2255.[14]

## II.   LAW & ANALYSIS

### A.  Ineffective Assistance of Counsel/*Strickland* Test

To succeed on an ineffective assistance of counsel claim, Defendant bears the burden of demonstrating: (1) that counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different."[15] The defendant most prove both prongs of the *Strickland* test, and failure to prove both prongs will defeat an ineffective assistance of counsel claim.[16] "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."[17]

First, assistance is ineffective if the counsel's representation is objectively unreasonable.[18] Judicial scrutiny of a counsel's performance must be highly deferential. It is too tempting for a defendant to question counsel's assistance after conviction, and it is too easy for a court to conclude that a counsel's act, omission, or unsuccessful defense was unreasonable, *ex post facto.*[19] Defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[20] The standard for constitutionally effective assistance of counsel

---

[13] Rec. Doc. No. 41, pp. 88.
[14] Rec. Doc. No. 67.
[15] *U.S. v. Bishop*, 629 F.3d 462 (5th Cir. 2010)(citing *Strickland v. Washington* 466 U.S. 668, 687-96 (1984)).
[16] *Strickland*, 466 U.S. at 697; *See United States v. Abner*, 825 F.2d 835, 846 n. 18 (5th Cir. 1987).
[17] *Strickland*, 466 U.S. at 687.
[18] *Id.* at 688; *U.S. v. Thomas*, 724 F.3d 632, 646-47 (5th Cir. 2013).
[19] *Strickland*, 466 U.S. at 689-94; *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134 (1982).
[20] *Strickland*, 466 U.S. at 687-88; *see also Motley v. Collins*, 18 F.3d 1223 (5th Cir. 1994).

is not errorless counsel or counsel judged ineffective by hindsight;[21] rather, the reasonableness of counsel shall be determined in light of the totality of circumstances in the entire record.[22]

Second, assistance is ineffective if counsel's act or omission prejudiced the defendant, such that it constitutes a violation of the defendant's Sixth Amendment right. A defendant is prejudiced when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[23] An error by counsel, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the judgment.[24] It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding;[25] rather, the defendant must "affirmatively prove prejudice" such that there is a reasonable probability the error or omission undermines confidence in the outcome.[26]

### B. Plea was Entered Intelligently and Knowingly and Defendant was Aware of Alternatives to Trial

Defendant argues counsel was ineffective because "counsel caused the petitioner to enter into a guilty plea unintelligently and unknowingly and failed to present an alternate choice of going to trial."[27] This claim is undermined by Defendant's sworn testimony at the plea hearing.

At the re-arraignment proceedings before Judge Brady on August 31, 2016, Defendant appeared before the Court represented by Andre Belanger ("Belanger") and

---

[21] *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981).
[22] *Id.* at 1355 (quoting *Washington v. Estelle*, 648 F.2d 276, 279 (5th Cir. 1981)).
[23] *Strickland*, 466 U.S. at 694.
[24] *Id.* at 690; *cf. United States v. Morrison*, 449 U.S. 361, 364-365 (1981).
[25] *Strickland*, 466 U.S. at 693.
[26] *Id.*
[27] Rec. Doc. No. 67, p. 4.

Ian Hipwell ("Hipwell"). During this proceeding, Defendant was informed of his constitutional rights by Judge Brady. Defendant was asked whether he understood the plea agreement, the nature of the proceedings, if he was satisfied with his representation, and whether he was aware of his right to a trial by jury.[28] Defendant, under oath, responded affirmatively. The current arguments raised by Defendant contradict his sworn testimony.

During the plea colloquy with Judge Brady, Defendant was asked whether he is "able to speak, read and understand the English Language."[29] Defendant's responded "limited, within reason."[30] Counsel for Defendant explained that there may be an issue with Defendant's reading proficiency with certain things, and as such, counsel took care to explain and read certain things to him directly.[31] The Court advised Defendant that, if at any time he did not understand what was being asked, he should advise the Court and the Court would clarify. The Defendant never expressed any lack of understanding.

Further, Defendant was both aware and advised of the nature and purpose of the re-arraignment proceedings. A summarization of the counts of the indictment, counts 1, 10, 11, 12, and 13, was provided in open court during the re-arraignment proceedings.[32] When asked, Defendant responded affirmatively that he understood what crimes he was charged with.[33] Defendant responded affirmatively when asked whether he had been provided with a copy of the indictment.[34] Defendant responded affirmatively when asked

---

[28] *See U.S. v. Robinson*, 25 F. 3d 1043 (5th Cir. 1994)(A defendant, with limited formal education, was found to have knowingly and intelligently entered into a plea agreement when his attorney discussed and explained the claims contained within the indictment.).
[29] Rec. Doc. No. 63, p. 3, lines 23-24.
[30] *Id.* at line 25.
[31] *Id.* at pp. 3-4.
[32] *Id.* at pp. 6 - 7
[33] *Id.* at p. 7.
[34] *Id.* at p. 5.

whether his attorney(s) had explained the nature of the charges to him and whether his attorneys answered any and all questions relating to the charges.[35] Defendant stated that he was "very satisfied" with his counsel and the representation and advice given by Hipwell.[36]

Finally, Defendant was advised of his constitutional right to trial by a jury and asked whether he understood that, in accordance with the plea agreement, he would waive his right to a trial. The colloquy between Defendant and the Court was as follows:

> **THE COURT:** ALL RIGHT. NOW, MR. WRIGHT, DO YOU UNDERSTAND, SIR, THAT YOU HAVE THE RIGHT TO PLEAD NOT GUILTY OR PERSIST IN THAT PLEA IF IT HAS ALREADY BEEN MADE?
>
> **THE DEFENDANT:** YES.
>
> **THE COURT:** AND DO YOU ALSO UNDERSTAND, SIR, THAT UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES, YOU'RE ENTTILED TO A TRIAL BY A JURY, OR IN SOME INSTANCES, BY A JUDGE ALONE IF YOU WENT TO TRIAL ON THESE CHARGES?
>
> **THE DEFENDANT:** YES.
>
> . . .
>
> **THE COURT:** AND DO YOU ALSO UNDERSTAND THAT IF YOU PLEAD GUILTY AND I ACCEPT THAT PLEA, YOU WILL GIVE UP YOUR RIGHT TO A TRIAL AND THE OTHER RIGHTS THAT I HAVE JUST DISCUSSED, AND THERE WILL BE NO FURTHER TRIAL, AND THAT I WILL SIMPLY ENTER A JUDGMENT OF GUILTY AND SENTENCE YOU ON THE BASIS OF YOUR PLEA HERE THIS AFTERNOON?
>
> **THE DEFENDANT:** YES, SIR.[37]

---

[35] *Id.*
[36] *Id.* at p. 6, line 5.
[37] *Id.* at pp. 8-9.

The record establishes that Defendant was aware of the nature of the re-arraignment proceedings, the crimes he was charged with, the contents of the plea agreement, and he was advised of his constitutional right to a trial and alternatives to entering a guilty plea. The clear and unambiguous sworn affirmations by Defendant are contrary to the claim Defendant entered into a guilty plea without knowledge of an alternate choice.[38]

### C.   Counsel's Alleged Failure to Object to PSR Indicia of Reliability

Defendant also claims counsel was ineffective because "counsel failed to effectively object to the PSR [for a] lack of indicia of reliability."[39] First, Defendant argues that the PSR "contained so many errors,"[40] including that a property used as collateral was improperly classified as demolished.[41] Additionally, Defendant asserts that the charge of making false statements should have been submitted to a jury because Donnie Floyd, a settlement closing agent and attorney, partook in and caused 90% of the actions that comprised the PSR score. The Court finds this claim meritless.

First, Defendant had the opportunity to dispute the contents and reliability of the PSR. If the Defendant took issue with any facts set forth in the PSR, or if it "contained so many errors,"[42] Defendant had the opportunity to challenge them at his sentencing. During the sentencing hearing, Judge Brady asked Defendant if he understood the PSR, to which Defendant responded affirmatively:

---

[38] *United States v. Brewer*, 60 F.3d 1142, 11245 (5th Cir. 1995) (Affidavits submitted by defendants in support of a motion for reconsideration were unconvincing when compared with the clear and unambiguous declarations in the plea agreement).
[39] Rec. Doc. No. 67, p. 5.
[40] *Id.* at p. 7.
[41] *Id.* at p. 5.
[42] *Id.* at p. 7.

**THE COURT:** ALL RIGHT. MR. BELANGER OR MR. HIPWELL, HAVE EITHER OF YOU GONE OVER THE PRE-SENTENCE REPORT WITH MR. WRIGHT?

**MR. BELANGER:** WE'VE REVIEWED THE CONTENTS OF THE REPORT AND THE CALCUATIONS WITH MR. WRIGHT, YOUR HONOR.

**THE COURT:** AND, MR. WRIGHT, HAVE YOU PERSONALLY READ THE PRE-SENTENCE REPORT?

**MR. WRIGHT:** IT WAS READ TO ME, YOUR HONOR.[43]

**THE COURT:** READ TO YOU.

**MR. WRIGHT:** I'M SORRY. IT WAS READ TO ME.

**THE COURT:** AND DID YOUR COUNSEL EXPLAIN IT TO YOU?

**MR. WRIGHT:** YES, SIR.

**THE COURT:** DID THEY ANSWER ANY QUESTIONS THAT YOU HAD?

**MR. WRIGHT:** YES, SIR.

**THE COURT:** AND YOU'RE SATISFIED WITH THE COUNSEL AND REPRESENTATION THAT THEY GAVE YOU?

**MR. BELANGER:** YES, SIR.[44]

Defense counsel raised six objections to the PSR, but an issue relating to gross factual error in the report was not one of them.[45] If Defendant had any issues with the report, he failed to raise them when Counsel raised the other objections to the PSR.

Defendant also argues that the issue of making false statements should have been presented to a jury because Donnie Floyd, a settlement closing agent and attorney, partook in 90% of the closings detailed in the PSR and caused the financing of the same

---

[43] It was previously established that Defendant has issue with reading proficiency with certain things, and as such Mr. Belanger, Defendant's attorney, stated that he and Mr. Hipwell took care to explain and read certain things to him directly. Rec. Doc. No. 63, p. 3-4.
[44] Rec. Doc. No. 64, p. 4.
[45] *See* Rec. Doc. No. 50.

collateral at multiple banks. However, this argument was, indeed, addressed at the sentencing hearing.[46] In seeking a downward variance for Defendant, Belanger argued that Floyd's conduct supported a variance for Defendant.[47] Belanger stated that, "[h]idden within the report submitted by the Government you'll see that he had an attorney that was doing closing work for him. That attorney did some bad work and was allowing properties to be doubling mortgaged and that's something that probably still needs to be further investigated . . ."[48] This issue was also fully briefed by Defense counsel in a *Sentencing Memorandum* submitted to the Court prior to sentencing. There is no factual basis to support the claim that Defense counsel failed to raise the matter. Furthermore, Defendant could have chosen to go to trial on this charge if he chose, as Judge Brady thoroughly explained.

### D.     Court "Operated Outside its Jurisdiction"

Defendant argues the "Court operated outside of its jurisdiction [when it] used the conspiracy statute which was not based upon a conviction when enhancing the petitioner's sentence."[49] The Defendant claims "the Court adjudicated the petitioner guilty of conspiracy;"[50] however, this claim is unsupported in fact and law. Defendant was not charged with, nor did he plead guilty to, conspiracy.

To the extent Defendant's argument challenges the use of his relevant conduct to enhance his sentence, such a calculation is permissible as a matter of law. "[T]he

---

[46] Rec. Doc. No. 64, p. 13.
[47] *Id.*
[48] *Id.*
[49] Rec. Doc. No. 67, p. 8.
[50] *Id.* at p. 7.

guidelines allow the consideration of relevant conduct for which the defendant was not convicted in determining the actual guideline range."[51]

Additionally, Defendant's argument that the failure of fiduciary duties of individuals providing title services, settlement services, and accounting services saddled him with the current convictions and sentence is irrelevant. While the Court acknowledges that the victims lacked prudence and failed to perform due diligence,[52] victim negligence is not a defense to fraud, making a false statement to a financial institution, or any other criminal conduct.[53]

### E. Counsel's Alleged Failure to Recommend Non-guideline Sentence

Finally, Defendant contends that "counsel failed to recommend a non-guideline sentence." This is demonstrably false considering both the *Sentencing Memorandum* filed by Defense counsel requesting a variance[54] and the arguments made by defense counsel at Defendant's sentencing.  Indeed, Belanger argued the Defendant should receive a downward variance because he did not engage in a "sophisticated scheme."[55] Belanger also argued that, based on the credit reports from 2006, the banks could see that Defendant fell within the highest risk category for default and, as a result, he should not have been loaned any money.[56] Belanger specifically asked the Court "to consider a significant downward variance in this case"[57] because "I do not believe the guidelines, as applied to this particular case, are accurate."[58] Belanger further stated, "I would ask the

---

[51] *U.S. v. Taylor*, 1994 WL 449348 (E.D. La. August 16, 1994); *United states v. Taplette*, 827 F.2d 101, 106 (5th Cir. 1989).
[52] Rec. Doc. No. 64, p. 16.
[53] *U.S. v. Kreimer,* 609 F.2d 126, 132 (5th Cir. 1980).
[54] Rec. Doc. No. 50.
[55] Rec. Doc. No. 64, p. 7.
[56] *Id.* at pp. 7-8.
[57] *Id.* at p. 9, lines 23-25.
[58] *Id.* at pp. 9 (line 25)-10 (line 1).

Court for a downward variance in regards to the terms of incarceration and possibly even the motive of incarceration and ask the Court to seriously consider either home confinement or a community center on behalf of Mr. Wright."[59]  There is no merit to this claim.

### III.    CONCLUSION

For the reasons set forth above, Defendant's *Motion to Vacate under 28 U.S.C. 2255*[60] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of December, 2020.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[59] *Id.* at pp. 13-14.
[60] Rec. Doc. No. 67.